UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| POP VAPOR CO., LLC, | Case No. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT** |
| ANGEL DISTRIBUTORS INC., | **JURY DEMAND** |
| SALIM ALLANI, and | |
| SALIMA ALLANI, | |
| Defendants. | |

Plaintiff Pop Vapor Co LLC ("Pop Vapor" or "Plaintiff") files this Complaint against Angel Distributors Inc. ("ADI") and its principals Salim and Salima Allani (collectively "Defendants").

## **INTRODUCTION**

Pop Vapor manufactures and distributes one of the most well-known and best-selling e-cigarette products on the market, the POP disposable vaping device ("POP"). Its POP devices are incredibly popular because they are disposable and prefilled, and do not require users to recharge them or buy refill cartridges or refill juice. They are distributed in brightly colored, distinctive boxes, and the devices themselves are wrapped in distinctive packaging. Each product is guaranteed for

1

safety and quality, including 400 uses per device, which is advertised on the box.

In late 2019, ADI and its principals Salim and Salima Allani began advertising and distributing counterfeit POP devices to retail stores. Despite receiving three cease and desist letters and even an in-person visit from Pop Vapor, Defendants continue to knowingly sell these counterfeit products, and have recently expanded their offerings to include new counterfeit versions labeled as "POP PLUS." Not only do these sales detract from Pop Vapor's sales, the products themselves are of inferior quality, and worse, could be unsafe. There is no way to ensure that a counterfeit device does not contain an inferior battery that could ignite and cause injury; nor is there any way to know what ingredients have been used to make the liquid contained inside. Moreover, despite having copied the "400 PUFFS" advertisement on the box, the fake product provides only 100 uses and emits a burnt taste even before 100 uses, likely causing many consumers to immediately develop a negative impression of the product.

Accordingly, Pop Vapor seeks monetary and injunctive relief from the Court to end Defendants' unlawful practices, to protect the public, and to compensate Pop Vapor for the harm it has suffered.

## PARTIES

1.    Pop Vapor is a limited liability company organized and existing under the laws of California, with its principal place of business located at 1818 South Olive Street, Los Angeles, California, 90015.

2.    Upon information and belief, Angel Distributors Inc., is a corporation organized and existing under the laws of Georgia, with its principal place of business located at 2725 Mountain Industrial Boulevard, Suite A4, Tucker, Georgia, 30084.

3.    Upon information and belief, Salim Allani is an individual residing in 5992 Mayfield View Drive, Tucker, Georgia 30084.

4.    Upon information and belief, Salima Allani is an individual residing in 5992 Mayfield View Drive, Tucker, Georgia 30084.

## JURISDICTION AND VENUE

5.    This action is for federal trademark unfair competition involving claims arising under the Trademark Act of the United States commonly known as the Lanham Act, 15 U.S.C. §§ 1051 et seq., and for unfair and deceptive trade practices, injury to business reputation, and tortious interference under Georgia statutory and common law.

3

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2), and § 1391(c) as Defendants reside within this judicial district and because a substantial part of the events or omissions giving rise to the relief sought herein occurred in this district.

7.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and (b). Additionally, this Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

## BACKGROUND FACTS

8.     Pop Vapor was founded in 2013 with a mission to create a safer alternative to cigarettes.

9.     In 2019, Pop Vapor developed a disposable vaping device that does not require messy liquid refills, cartridge refills, or battery charging. Each device provides 400 uses, as advertised on the packaging.

10.    Pop Vapor's devices are crafted with the finest picked extracts and flavors ensuring a high quality product. Its batteries are tested for safety.

11.    It began selling these devices in April 2019 under the mark "POP," and under the design mark as shown below.



12.     The mark is the subject of pending state and federal trademark applications.

13.     The devices are packaged in a highly distinctive, brightly colored box. The

box colors vary with each flavor, but each box consistently is printed with the

"POP" design mark in dark green amid numerous images of fruit. Some

examples are shown below.



14.     The vaping device itself is wrapped in a distinctive, brightly colored wrapper,

with similar layout and imagery as the box, as shown below:



15.  The POP devices were an immediate commercial success. More than seven million authentic devices have been sold to date.

16.  As a result of Pop Vapor's advertising and quality products, its marks and packaging trade dress are famous within the vaping community and are highly valuable.

17.  Many consumers purchase Pop Vapor's products because of Pop Vapor's reputation for quality.

**Counterfeiting**

18.  The greatest threat to Pop Vapor is counterfeiting.

19.  Pop Vapor estimates that the number of counterfeit devices sold in the United States equals or exceeds the number of authentic devices.

20.  Reports introduced into the Congressional Record indicate that counterfeiting costs U.S. businesses between $200 and $250 billion every year and results in 750,000 lost jobs. Congress has recognized that counterfeits not only present

"'grave risks to the health and safety of consumers of these articles,'" but have a "'dire effect on the economy'" as well. S. Rep. No. 104-177, at 2 (1995) (quoting H.R. Rep. 98-997, at 5-6 (1984)).

### Angel Distributors Inc.

21. ADI and its principals Salim and Salima Allani distribute wholesale vaping products to resale customers.

22. On December 24, 2019, Pop Vapor became aware that Defendants were offering a disposable vape product branded as "POP" sold in identical packaging, and with identical wrappers on the devices themselves.

23. Pop Vapor knows these products are counterfeit because they were not purchased from Pop Vapor or its only authorized distributor.

24. Pop Vapor has examined the devices sold by Defendants and has further confirmed that they are fake due to numerous differences in the device appearance, performance, and packaging.

25. In texts and emails sent to his customers, Mr. Allani and ADI advertise these counterfeit products as genuine.

26. Defendants include images of product packaging indistinguishable from genuine Pop Vapor products.

27. A screenshot of one example text is pictured here:



28.   Pop Vapor, via its authorized distributor "Dope Distribution," notified Defendants that these products were counterfeit – once in a general letter sent to vaping distributors before Pop Vapor was specifically aware of Defendants' actions, and in another general letter sent afterwards.

29.   Pop Vapor also sent a cease and desist letter to ADI. True and correct copies of all of these letters are attached as collective Exhibit A.

30.   On March 18, 2020, a representative from Pop Vapor hand-delivered a fourth letter to ADI, hoping to personally urge Defendants to stop selling counterfeit

products. Mr. Allani ordered the representative to leave and called the police, accusing the representative of trespassing.

31. Despite Pop Vapor's numerous attempts to inform Defendants of their counterfeit sales and to implore them to stop, Defendants expanded their counterfeit sales to include *new* counterfeit products rather than cease their sales of known counterfeit products.

32. In April 2020, Defendants began selling counterfeit POP devices, this time under the name "POP PLUS."

33. The new counterfeit devices feature identical packaging as Pop Vapor's packaging, but with the addition of the word "plus."

34. Defendants advertise these products using images including these below:



35. Defendants also sell the fake product in flavors not offered by Pop Vapor.

36.   Notably, Defendants offer a "Reds Bull" flavor that appears to flagrantly violate the trademark rights in the popular "Red Bull" energy drink:



37.   Defendants are well aware that they are selling counterfeit products but continue to not only sell fake products, but to increase their fake offerings.

**Injury and Damages caused by the sale of Counterfeit Products**

38.   Defendants charge a wholesale price of $3.25 per unit, which is approximately 40% less than Pop Vapor's wholesale price. A sample invoice from ADI reflecting sales of counterfeit product is attached as Exhibit B.

39.   By offering counterfeit product at a lower price, ADI's customers can charge lower retail prices, creating less demand for the more expensive, authentic product.

40.   Defendants' counterfeit product is of an inferior quality in numerous ways.

41.    Defendants' juice flavors are not identical to authentic Pop Vapor flavors. The counterfeit flavors are diluted, and not as full-flavored as Pop Vapor's flavors. Customers may be turned away from authentic Pop Vapor product because they dislike the taste of the counterfeit products.

42.    Defendants' juice flavors are comprised of unknown ingredients, which may not be safe.

43.    Defendants' products are sold in inferior quality packaging. For example, Defendants' product wrapper is a flat matte wrapper, whereas Pop Vapor's product is sold in a dimensional wrapper that features glossy, dimensional details.

44.    As another example, many of Defendants' counterfeit devices feature poor quality graphics that are the wrong color or feature incorrect imaging.

45.    As another example, authentic Pop Vapor devices are sold with removable protective plastic guards on both ends of the device that ensure a sanitary, unbroken product. These removable guards are missing on the counterfeit devices sold by Defendants.

46.    The inferior packaging creates an impression of an inferior quality product.

47.    The mouthpiece on Defendants' counterfeit products is inferior and the airflow quality is inferior.

11

48.    The fake device produces an unappealing, burnt taste after 50-70 uses, rendering the product practically unusable at the point.

49.    The battery in Defendants' devices does not last as long as the battery in Pop Vapor's devices. A test of the counterfeit product sold by Defendants provided only 100 puffs, compared to the 400 puffs provided in an authentic device.

50.    The reduced output is directly contradictory to the claim on the packaging that the device provides 400 puffs. Consumers that try the counterfeit device are likely to have a negative impression of a product that obviously does not provide the number of puffs as advertised.

51.    Defendants' devices are manufactured under unknown quality standards.

52.    These unknown quality standards are of most concern in regards to the battery. Batteries in e-cigarette devices have been known to overheat and explode, causing severe injury. Between 2015 and 2017, hospitals documented 2,035 emergency room visits caused by exploding e-cigarette batteries. *See* https://www.today.com/health/e-cigarette-burns-explosions-how-common-are-vape-pen-injuries-t156780.

53.    The availability of a "REDS BULL" flavor indicates a total disregard for the trademark rights of others and may cause consumers to believe that Pop

Vapors is a non-reputable company that operates in disregard of third-party intellectual property rights.

## COUNT I
### (against all Defendants)
### Unfair Competition under 15 U.S.C. § 1125(a)

54. Plaintiff realleges and incorporates herein by this reference the allegations contained in paragraphs 1-53 of this Complaint as if set forth in full.

55. Pop Vapor's trademarks and trade dress are of significant value, are highly distinctive and arbitrary, and have become associated in the public mind with products of the highest quality and reputation.

56. Defendants are knowing and willful sellers of counterfeit versions of Pop Vapor's products.

57. Defendants' actions described above have caused and are likely to cause confusion and mistake and to deceive potential purchasers and the general public as to the source, origin, or sponsorship of their counterfeit products, and are likely to deceive the public into believing that the counterfeit products originate from Pop Vapor.

58. Such action is detrimental to Pop Vapor's goodwill, reputation, and sales.

59.     This has caused damage to Pop Vapor and the substantial business and goodwill symbolized by Pop Vapor's trademarks and trade dress in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

60.     Defendants' actions described above, including the unauthorized use of Pop Vapor's trademarks and trade dress in interstate commerce, have caused, and unless restrained, will continue to cause, great and irreparable injury to Pop Vapor, to Pop Vapor's trademarks and trade dress, and to the business and goodwill represented thereby, leaving Pop Vapor with no adequate remedy at law.

**COUNT II**
**(against all Defendants)**
**Trademark Infringement under Georgia Code O.C.G.A. § 23-2-55**.

61.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 as though fully set forth herein.

62.     The State of Georgia has an important interest in ensuring that persons and entities doing business with Georgia residents fully comply with Georgia laws.

63.   Upon information and belief, Defendants have attempted to encroach upon the business of Pop Vapor by the use of Pop Vapor's trademarks and trade dress with the intention of deceiving and misleading the public.

64.   Defendants' actions therefore constitute unfair and fraudulent business practices within the meaning of Georgia Code O.C.G.A. § 23-2-55.

65.   Defendants' conduct as aforesaid has caused great and irreparable injury to Pop Vapor, and unless such conduct is enjoined, it will continue and Pop Vapor will continue to suffer great and irreparable injury.

66.   Pop Vapor has no adequate remedy at law.

## COUNT III
### (against all Defendants)
### Violations of the Georgia Uniform Deceptive Trade Practices Act under O.C.G.A. § 10-1-370 et seq.

67.   Pop Vapor realleges and incorporates by reference Paragraphs 1 through 66 as though fully set forth herein.

68.   Defendants have knowingly made false and misleading representations that are misleading customers and potential customers as to the source of their goods or services and as to their affiliation with Pop Vapor.

69.   Furthermore, Defendants' use of Pop Vapor's trademarks and trade dress is likely to cause confusion of or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or affiliation, connection, or association with or certification by another.

70.   Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

71.   Defendants' conduct as aforesaid violates the Georgia Uniform Deceptive Trade Practices Act, Georgia Code O.C.G.A. § 10-1-370 et seq., and unless such conduct is enjoined, it will continue and Pop Vapor will continue to suffer great and irreparable injury.

72.   Pop Vapor has no adequate remedy at law.

73.   Defendants have received revenues and profits as a result of their infringing conduct, to which Defendants are not entitled, and Pop Vapor has suffered damages as a result of Defendants' conduct.

### COUNT IV
### (against all Defendants)
### Common Law Unfair Competition – Trademark Infringement

74.   Pop Vapor realleges and incorporates by reference Paragraphs 1 through 73 as though fully set forth herein.

75.    Defendants have used in commerce the trademarks and trade dress of the Pop
       Vapor products without the authorization or consent of Pop Vapor, in
       connection with sale or offer of sale of goods and services similar to those
       sold by Pop Vapor.

76.    Defendants' use of the trademarks and trade dress of the Pop Vapor products
       is calculated to, likely to, and does in fact confuse and deceive consumers
       about the origin of Defendants' goods.

77.    The foregoing conduct of Defendants constitutes the infringement of Pop
       Vapor's common law rights in the trade dress and trademarks in its Pop Vapor
       products and unfair competition in violation of the common law of the State
       of Georgia.

78.    Defendants' conduct as aforesaid has caused great and irreparable injury to
       Plaintiff, and unless such conduct is enjoined, Pop Vapor will continue to
       suffer great and irreparable injury.

79.    Pop Vapor has no adequate remedy at law.

## **REQUEST FOR RELIEF**

WHEREFORE, Pop Vapor requests judgment as follows:

1.     That Defendants, as well as ADI's members, directors, officers, agents,
       employees, successors and assigns, and all others acting in knowing consort

17

with them, be permanently restrained and enjoined from using Pop Vapor's trademarks or trade dress, or engaging in any other or further acts of unfair competition against Pop Vapor;

2.   That Pop Vapor be awarded all damages to and costs incurred by it because of Defendants' infringing activities and other conduct complained of herein, together with all profits of Defendant

3.   That the Court declare that this an exceptional case and award Pop Vapor its attorney's fees and costs as provided by law;

4.   That Pop Vapor be awarded its pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

5.   That the Court grant Pop Vapor and such other and further relief as the Court may deem just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of any issues so triable by right.

Respectfully submitted this 5th day of May, 2020.

/s/ Amanda G. Hyland
Amanda G. Hyland
Georgia Bar No. 325115
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, Georgia  30339
Telephone: +1 770 434 6868
Fax: +1 404 434 7376
Email:   ahyland@taylorenglish.com

*ATTORNEY FOR POP VAPOR CO., LLC*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| POP VAPOR CO., LLC, | Case No. |
| Plaintiff, | |
| v. | **VERIFICATION OF COMPLAINT** |
| ANGEL DISTRIBUTORS, INC., | |
| SALIM ALLANI, and | |
| SALIMA ALLANI, | |
| Defendants. | |

I, Aleem Wadhwania, the Managing Member of Pop Vapor Co., LLC, execute this

verification on behalf of Pop Vapor Co., LLC. I have reviewed the Complaint, and

the facts set forth therein are true and correct based on my personal knowledge.

This 28 day of April, 2020.

ALEEM WADHWANIA

Sworn to and subscribed before me
this 28 day of April, 2020.

Notary Public
My commission expires   September 16 2022



01745674-1 1